May it please the Court, my name is Kim Zeldin. I'm here on behalf of Mr. William Pickard. Congress specified – I'd like to reserve, excuse me, two minutes for rebuttal. Congress specified that when an individual has been officially confirmed as an informant, the government cannot issue a GLOMAR response but must comply with the Freedom of Information Act. But isn't the issue we have to decide whether he was officially confirmed, isn't that the real problem we have here? I agree with you once we get to that point, then I think the statute is clear. The question is what constitutes official confirmation. Correct, Your Honor. And the standard for that is under Benevides, which is whether or not there has been – his information has been publicly revealed. Here there was evidence below that he was publicly revealed as an informant. There was testimony in the record at the trial court level that Mr. Pickard – Mr. Skinner was an informant. How did you prove that? We proved that through three pieces of evidence. First, there were the declarations of the DEA agents. Now, let's start with that. I understand that they object to the authenticity of some of this stuff. They object to the authenticity of supposedly everything, but they'd actually never made any – Well, did – let me just back up for a second. Did Judge Breyer ever rule on the evidentiary objections? No, he did not. So we have outstanding somewhere these objections to the authenticity of these things that you've submitted to Judge Breyer, or that were submitted to Judge Breyer. Judge Breyer didn't even consider the evidence, so it's hard to know what – there was definitely – there were no rulings, and there were no specific objections to any specific evidence. So how can there be a ruling on that evidence? Well, let's take the DEA stuff. How is that authenticated? These are documents that the DEA people submitted in other cases. He submitted – the DEA submitted these declarations in the court. They were evidence in Mr. Pickard's trial. Okay. And how did you authenticate that these were, in fact, authentic declarations? Mr. Pickard submitted a declaration saying that they were submitted in his trial. I mean, the declarations are self-authenticating. They say, I declare under penalty of perjury that they are true and correct. There's – I mean, they're self-authenticating. There's nothing more for the court to have done. Okay. What else besides the DEA? There was also the agreements. There were two agreements between Mr. Skinner and the DEA. And how is that authenticated? They were exhibits that the government presented at trial that were not – that the government itself submitted at trial. How can the government – Well, you can't just say that. I mean, you have to have somebody who has personal knowledge that says, I know that these are authentic. Who authenticated those? Well, Mr. Pickard testified that the documents were submitted by the DEA at trial. The DEA, therefore, stipulated their authenticity because the DEA submitted them as evidence and entered them into evidence at trial. No, that – I don't think the rules of evidence work quite that way, counsel. You are seeking to introduce in a completely separate proceeding a document that you say was admitted into evidence at his criminal trial, which was a separate proceeding. The mere fact that they appear at the criminal trial does not authenticate them for admission into the civil trial. So the question that I think we're trying to explore with you is, under the rules of evidence, how should that evidence have been submitted to Judge Breyer in the FOIA action?  Under the rules of evidence, I believe that it should have been submitted with a declaration by Mr. Pickard, because that was the only way for him to submit it, attaching the documents and saying that these documents were submitted. There's no absent testimony that he actually obtained that said that these were true and correct copies of documents. He could have, for example, I suppose, submitted trial testimony from the DEA agents when they talked about these documents. We would have gotten the clerk of the court to say, I certify that these documents had been submitted to the, you know, part of the official record of the criminal case. Yeah, but the problem was there weren't specific objections to these pieces of evidence. All that the DEA did below was just make a general – there was no specific objection, so there's nothing specifically to respond to. It's our argument that the objections were not preserved for appeal. But if the objection was that the documents were not properly authenticated, what more does the opponent need to say in order to go back? They can't just say all documents were – he said all documents were not authenticated and that there were no – in their brief, all they said was there were – there were documents. I guess I'm having a hard time following your argument. That is an objection, that the documents are not authentic, therefore, we don't stipulate that they're admissible in this proceeding. There were hundreds of documents submitted. Which documents? The burden is yours, as the proponent of the evidence, to lay the foundation for the admission of the evidence. You offer, proffer the evidence, the opponent objects. The rules of evidence are pretty clear as to what you need to do in order to overcome the objection. What did you do to overcome the authentication objection? Well, Mr. Pickard was representing himself. He was a pro se prisoner at the time and still is. And that doesn't – that doesn't relieve him of the obligation to abide the rules of evidence. No, but it allows the Court to be able to be more lenient in viewing the evidence. And these were documents that by themselves, if you look at them, they're self-authenticating. They say that there was an agreement. They're signed by the DEA and they're signed by the – and they're signed by Mr. Skinner. How is it that the DEA can say that they're not authentic when the DEA signed the document? How can the – Look at Rule 803 and the 800 series to tell you how you do it. But the way he did it is not the way you do it. Well, you started to tell us, David, the DEA affidavits, there was this agreement. You said there was a third thing. There was another? There was Mr. Pickard's testimony that at trial the witnesses testified that the – that Mr. Skinner was an informant. You know, this is Pickard's own declaration. Yes. Now we're talking about stuff that's within his personal knowledge. Yes. And his declaration says what? That when he was at the trial, the DEA agents testified that Mr. Skinner was an informant. And who was the – was this – was the government – he was a government witness at that time? Did the government elicit that testimony? The government elicited the testimony at trial. Okay. And the government elicitation of the testimony is reflected in the Tenth Circuit's decision in Mr. Skinner's appeal. So it is – This idea of officially recognizing the person as an informant, I don't know who speaks for the DEA other than the director of the DEA. Do they – is there something in the record that tells us who can officially speak for the DEA? Benavides adopted the DEA's standard with respect to that and said that the DEA – that it's not the DEA necessarily who has to officially confirm the informant's status, but it is either the DEA or the individual himself. So Mr. Skinner could also have done so, but in this case, it was the DEA that confirmed it at the trial that Mr. Skinner was an informant. The DEA has to be – the DEA is an organization. The organization doesn't speak except through people. Yes. Who – when you say the DEA, you mean who specifically? I mean the agents who testified at that trial. The agents that testified at the trial. Now, is there anything that shows they can officially speak for the DEA? They can bind the DEA. I do – I have problems when they say officially. I know who's the head of the DEA, and I suppose he or she can make that determination. But then again, I don't know how far down the chain, how far up do you have to go so that they can actually bind the DEA? I don't think that the phrase officially confirm means that you have to have a level of a certain authority in order to bind the DEA. Otherwise, it would be a blanket – essentially what that kind of standard would require would be that anyone could just blanketly give a Glomar response. Absent a privacy waiver, it would be just Glomar responses, because then it would be upon – when would – under what circumstances would the head of the DEA ever announce that Mr. Skinner was an informant? The DEA took a position in a trial with the U.S. attorney against Mr. Picker, and the U.S. attorney said that Mr. Skinner was an informant, and put his testimony in front of the court, and upon that testimony, he was convicted. That's a different department. That's the Attorney General's department. He, the head, wouldn't have to at all even have some regulations that say this individual or these individuals can speak for the DEA on this issue. But there's nothing in the record that points me someplace that the person trying the case, for example, who's not a member of the DEA, is a member of the Attorney General's staff, that they have a right to bind somebody in a different department in the executive branch. So I just wondered if there's anything that tells me who's – who do you go to get – who do you go to get the word that they're officially recognized? Official means something, and it's not defined for me. It isn't defined anywhere. And the only case that deals with it is Benevides. And that case said – excuse me, I'm actually – Why don't you finish your answer? Okay. And Benevides said that the test was whether or not it was in the public realm. It didn't matter how it got in the public realm, just so that it was in the public realm. That they're officially recognized if it gets in the public realm. Correct. In other words, if the New York Times pays somebody off to get some information, they publish something in the New York Times, then it's officially recognized by the DEA. No, not that it's officially recognized by the DEA, but it's officially confirmed. But oh, the New York Times is now the government? No, I'm not saying that the government is – but in this case, it does – it's not the New York Times in this case. It's the DEA that submitted the declarations. It's the DEA's – it's the DEA's agreement that's in the record. The agreement between the two. We use the term DEA. Who in the DEA is always the person? The agents of the DEA. The agent. Yes. So is there something that tells us that the agent, who's a lower – the lowest part of this giant DEA organization, can officially speak for the DEA? Somebody authorized the agents to be able to testify at the trial, so presumptively, therefore, the DEA authorized that. So is there something in the record on that? There's nothing in the record on that. Well, they were called by the government, right? Correct. They're not shooting your mouth off in a bar. I mean, they're – they're testifying. Well, that was my point before, but there's nothing that specifically says that. I'm not being critical. I'm just curious.  I'm just curious. We've got to write an opinion, and there isn't much to tell us where we go in this. Well, thank you for your help. Thank you, Mr. Court. Now, do you officially speak for the DEA? I won't be making any official confirmations today, Your Honor. May it please the Court, my name is Neil Tseng, and I represent the Department of Justice in this appeal. I think the Court recognizes that the threshold issue here is whether there was official confirmation or not. And there cannot – the plaintiff's position is that as soon as someone testifies at trial that someone is a confidential informant, then he is officially confirmed as such for purposes of FOIA. Well, that's not exactly the way they put it. They say if the United States government calls as a witness an informant and elicits that testimony in open court, that's official confirmation. Right. And that cannot be the test, because I think as the Court recognized in its questioning, there's a difference between calling someone for the purpose of giving testimony to do the job that the DEA does, which is try to obtain a conviction and put people behind bars, and the entirely separate inquiry of officially confirming somebody for purposes of FOIA. And I think a hypothetical – I don't get that. If they call as a witness, Mr. Skinner, the United States attorney says, what's your name? He goes, my name is Skinner. What do you do? I'm an informant. Why isn't that official confirmation? Right. So official confirmation – it's not an official confirmation, because as the plaintiff concedes, it must be a public disclosure. And that, under the Reporters Committee case, simply because something is testified to in a courthouse or may be available in courthouse files is not the same thing as making it public so that it's a public disclosure. How about if the government elicits it in public? Well, no. I think it's the same thing. And in the Reporters Committee, the Supreme Court emphasized that there's a difference between the practical obscurity of something being – once having been available years ago, either through testimony or in courthouse files or archives, and something being considered public for purposes of FOIA. And I think as a practical matter, the plaintiff's position would gut the meaning of C-2 as the following hypothetical would show. If, for example – and this hypothetical depends on the fact that a response to a FOIA request does not depend on who the requester is. So if, for instance, John Doe were to come to the DEA tomorrow and make the exact same request as Mr. Picard did, the DEA would have to give the same response to John Doe. And let's assume that Mr. Skinner today was serving as a confidential informant on a prison gang, let's say, and John Doe was the leader of the gang. And he wanted to figure out if Skinner was serving as a confidential informant. Under the plaintiff's position, if John Doe made this FOIA request, the DEA would have to respond by producing a Vaughn Index, which would give John Doe all the information he needed to know to know that Mr. Skinner was currently serving as a confidential informant. How would it give him all the information? All it is is a list of documents that the judge would then have to use to – Right. It's a list of documents describing – well, you have to adequately describe the documents to show that an exemption applies. So for instance – It doesn't give the contents of the documents. It just gives – It does not, but it describes it. So if, for instance, John Doe had asked for all records of his informant activity and they had to provide an index saying, well, here's a record from, you know, January 2011 regarding his informant activity in prison or, you know, something like that, that's the rationale behind a GLOMAR response, that even if you deny the request and refuse to produce the records but you give a Vaughn Index, that in itself is enough information for people to figure out who is a confidential informant. And that cannot be the result of C-2. That would gut the meaning of C-2. That is why it places the prerogative in the agency to decide, do we want to officially confirm this person as an informant to the world for purposes of FOIA? And certainly, the agency has that prerogative to decide, well, you know, we no longer want to protect this identity. We're willing to announce him to the world. Does the agency ever officially confirm an informant's identity? And if so, by what authority? What regulation tells us how this is accomplished? Well, in response to your first question, I believe it does, but this is sort of through – if you read some of the cases that were cited in the briefs, in some of those, it appears that there was a concession, that there was official confirmation. So I believe that the agencies do, at certain points, do. You're not answering my question, and I don't think my question has an answer because in the absence of either a statute or a regulation, on this record, we're left with a complete void as to how an agency would officially confirm. Well, the agency could do it through a press release, through another FOIA disclosure, if, for example – How do I know that a press release is any more reliable than DEA agents testifying under oath at trial? Well, I think it's more – well, because it's more official than that. And it's for the purpose of confirming somebody as an informant, whereas there's been a distinction made earlier between, you know, which employees of the agency – Where do I find in the regulations of the DEA the delegation by the administrator or the director of the Drug Enforcement Administration authorizing special agents of the DEA to officially confirm Skinner's status? I'm not sure that special agents are – do have the authority to officially confirm someone. That's not the position of the DEA. You're not answering my question. Where do I find in the regulations of the agency an answer to my question? How do I know that a street-level drug enforcement agent is or is not authorized to officially confirm Skinner's status? I'm not aware of any regulations which either authorize or do not authorize a street-level agent to – So how can we, as three judges, write an opinion that says, official confirmation occurs when, if we don't have any source to look at? I mean, we have your word that if they issue a press release, that's official confirmation. Are you authorized by the Attorney General to bind the Drug Enforcement Administration to that position? If there's a press release? The position taken by the DEA in this case, and it's in the record, was that if there was a press release, then that would – the DEA would not issue a GLOMAR response in that instance. So that is their position that that is one way in which they would not issue a GLOMAR response. Any press release? Well, a press release officially confirming Skinner to be an informed – a confidential informant. By whom? By the DEA. So it has to – In the DEA. The DEA is a conglomeration. It's a big administration. The DEA means the secretary to the lowest person is part of the DEA, so they can issue a press release? I believe it'd have to be somebody authorized to issue a press release of the DEA. I'm not sure every employee of the DEA – How do we find out whether a person was authorized to do – to issue press releases? There's no regulation? There's nothing? I'm not aware of any regulation. Is there a document someplace that says the following people or the following types of officers can issue officially recognized press releases involving confidential informants? There's no document in the record and there's none that I'm aware of that states that. I understand that this is a little difficult to have lawyers come and have these unanswerable questions, but we're supposed to answer them in an opinion. And we're trying to get it right. We understand there's an important element of people knowing what the government's doing. On the other hand, we understand that law enforcement involves crimes and they aren't usually committed in churches where you can bring the priest into witness and it's a dirty business that occurs. But then again, in order to enforce crimes, we sometimes have to use criminals and they get protected because things can happen to people who cooperate with the government. We understand all those issues, but that doesn't help us in making a decision on this case in which we have to write whether or not this person has been officially recognized as an informant. Most people would read the trial record and say they must have been officially recognized because they came in and testified in the case and named as a confidential informant. But that doesn't help us unless there's something we can say when that occurs, the person's officially recognized. Now you're saying that even though they came into court and in a court of law, people taking the oath, called by the government, the United States Attorney, and testified that they are confidential informant, that's not enough. But then we have to say what is enough. Now you're going to write the opinion for me. I'm going to usurp you. What will I say? I would say that it has to be more than merely testimony in a courthouse or documents that were introduced at trial. It must be a statement by the agency, by the DEA, and it must be more public than merely being available in a courthouse. And we submit that a press release would suffice. Now I understand there's been questions about are there regulations governing who can issue a press release? But certainly to decide this appeal, it only needs to be determined that testimony in a courthouse is not enough. And the Reporters Committee case establishes that. You're out of time. Thank you. Thank you, Your Honor. Ms. Zeldin, I think you are out of time as well, so we will say goodbye at this point. Before we adjourn, I know you've taken this case on a pro bono basis, and Judges Wallace and Tallman join me in thanking you very much for doing that. The case just argued is submitted. Good morning.
judges: Wallace, Silverman, Tallman